MORGAN v. THE CHICAGO & ALTON RAILROAD COMPANY, *Appellant.*

76  161
84a 488

1. **Liens Against Railroads**: SERVICE OF NOTICE: FOREIGN COMPANY: STATION AGENTS. The station agents of a foreign railroad company operating a railroad in this State are the representatives of the company in such a sense that service of notice upon them, of claims for work and labor done or materials furnished upon the road, is service upon the company within the meaning of the statute providing the mode of obtaining and enforcing liens against railroads. R. S. 1879, §§ 3200 to 3216.

2. ———: ENFORCEMENT IN CASE OF SEVERAL OWNERS. It is not essential that all the companies that may be interested in a railroad should be made parties to a proceeding to enforce a lien for work and labor or materials; but if any are omitted their interest will not be affected.

3. **Railroads**: PERSONAL LIABILITY IN FAVOR OF SUB-CONTRACTORS, LABORERS, ETC. The provision of section 787, Revised Statutes 1879, requiring sub-contractors, laborers, etc., to give notice within twenty days after the performance of the labor or delivery of the material for which claim is made against a railroad company, does not relate to the enforcement of a lien, but the establishment of a personal liability against the company.

4. ———: ———. Unless the company is notified within twenty days as provided by that section, a personal judgment against it in a suit brought thereunder, will be erroneous.

*Appeal from Howard Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

JUDGMENT MODIFIED.

*Smith & Krauthoff* for appellant.

1. The statute does not prescribe the manner of service, and the rule is, that in such cases, there must be actual, personal service. *Allen v. Manf'g Co.*, 72 Mo. 326; *Carney v. Tulley*, 74 Ill. 375; *Railroad Co. v. Cauble*, 85 Ill. 555; *People v. R. R. Co.*, N. Y. Sup. Ct. 211. A corporation can only be notified in the way pointed out by statute.

*Cosgrove v. R. R. Co.*, 54 Mo. 499. There is no provision authorizing service on an agent. The notice must be given through the president or board of directors. No other notice will do. *Lounsbury v. R. R. Co.*, 49 Iowa 255. Even if it were permissible to serve the notice on an agent, it must be an agent having authority in relation to the subject matter of the notice. Ang. & Ames on Corp., §§ 307, 308; Story on Agency, (8 Ed.) § 140; *Hayward v. Ins. Co.*, 52 Mo. 191; *Railroad Co. v. James*, 22 Wis. 194; *Congar v. R'y Co.*, 24 Wis. 157; *Bank v. Payne*, 25 Conn. 444; *Blumenthal v. Bank*, 60 N. Y. 278, 296; *Platt v. Axle Co.*, 41 Conn. 255, 264. The service of notice was on the depot agent at Glasgow. It is not alleged that the scope of his authority embraced matters connected with the building of the road. The law does not recognize his authority in connection with such matters. A station agent's duties are to receive and deliver freight and to make contracts for the transportation of freight and passengers. 2 Redf. Railways, (5 Ed.) 136; *Sewing Mach. Co. v. R'y Co.*, 70 Mo. 572. He cannot be presumed to have had any authority in relation to the construction of the road. *McDermott v. R. R. Co.*, 73 Mo. 516; *Tucker v. R. R. Co.*, 54 Mo. 177; *Brown v. R. R. Co.*, 67 Mo. 122; *Railroad Co. v. Green*, 68 Mo. 169; *Bank v. Hogan*, 47 Mo. 472. Where the duties of a given agent are limited to a particular branch of the principal's business, notice to him does not affect his principal, in the absence of a statute which so provides. *Brewster v. R. R. Co.*, 5 How. Pr. 183; *Flynn v. R. R. Co.*, 6 How. Pr. 308; *O'Brien v. Canal Co.*, 10 Cal. 343; *Doty v. R. R. Co.*, 8 Abb. Pr. 427. That it would have been inconvenient to send the notice outside of Howard county, or even to the state of Illinois, is no answer to our position. If the statute is too harsh in its requirements, the legislature alone can modify its terms. It is a harsh provision and one of doubtful wisdom, under which it is possible that a railroad corporation may be held to pay twice and possibly three times for the construction of its road,

and in no case should such payment be exacted unless the plaintiff brings himself fully and technically within the statute. *Rafter v. Sullivan,* 13 Abb. Pr. 263 ; *Davis v. Schuler,* 38 Mo. 26 ; *City v. Brundage,* 57 Ind. 265.

2. There is a defect of parties defendant. The petition discloses that the railroad sought so be charged with a lien, is an entirely different one from defendant's line. It would, indeed, be an anomaly if the railroad of the Kansas City, St. Louis & Chicago Railroad Company could be charged with a lien and sold under execution in a proceeding to which the Chicago & Alton Railroad Company alone was a party defendant. Philips Mech. Liens, § 399 ; *Waldroff v. Scott,* 46 Texas 1.

3. Again, under the act of March 22nd, 1873, (Acts 1873, p. 61,) before a sub-contractor can hold the owner liable for a debt due him by the principal contractor, he must serve notice of the fact of such indebtedness on such owner within twenty days after the performance of the work by him. No liability on the part of the owner to pay the claim of a sub-contractor arises in the absence of such notice, and it is hardly to be presumed that it was intended by the act of March 21st, 1873, to make the property of a corporation or person subject to the payment of a debt to pay which there is not first established a legal liability and duty. The two statutes should be construed as *in pari materia.* In order to constitute a personal liability, the owner is entitled to the twenty days' notice to enable him to protect himself by withholding from the principal contractor an amount sufficient to pay the sum named in the notice. After having thus created a liability on the part of the owner, the act of March 21st provides the sub-contractor with a means of enforcing his claim by charging it as a lien on the property of the owner, and protects him from loss by the insolvency of the owner.

4. It was erroneous to render a personal judgment Philips Mech. Liens, §§ 10, 212, 305, 307, 447, 449 ; *Conk-*

*right v. Thomson,* 1 E. D. Smith 661; *Waldroff v. Scott,* 46 Texas 1; *Work v. Hall,* 79 Ill. 196, 203.

*Chas. A. Winslow* for respondent

The statute is highly remedial and should receive a liberal construction. 63 Mo. 266; *Putnam v. Ross,* 46 Mo. 337; *Oster v. Rabeneau,* 46 Mo. 595. The defendant being a foreign corporation, without any chief office or agent in this State, service on its depot agent must be held sufficient; otherwise the execution of the statute meets with a serious obstacle at the outset. Plaintiff was reduced to the necessity of hunting up the chief officers in a foreign jurisdiction for the purpose of making the service, or of making it on such officers or agents as he could find within the jurisdiction. The whole policy of our legislation is against the idea that he was bound to make the service on the general officers in the foreign jurisdiction; and to so hold would render the execution of the law difficult and onerous. Notice given to the proper agent of a corporation is notice to the corporation. There is no other way to give it. *Carr Spring Co. v. Rubber Co.,* 8 Blatch. 9. The statute designates no method of making the service. In such a case, as in all cases where a statute requires a thing to be done without pointing out the mode of doing it, any method which accomplishes the object with reasonable certainty should be held sufficient. The mode of service selected by the legislature for serving original processes, in cases like this, was followed in serving the copy of the account on the defendant in this case. The statute provides for obtaining personal service on a foreign corporation, "having an office or doing business in this State, by delivering a copy of the writ and petition to any officer or agent of such corporation or company, in charge of any office or place of business." R. S., § 3486. In view of the above rule, and the similitude of this statute, it is submitted that the mode of service adopted was sufficient as personal

service on the defendant, whether considered under the lien law alone, or in connection with section 3505. The station agent was a proper agent to receive the service, and, surely, no more practical or certain method of accomplishing the object of the statute could have been selected, because these agents usually owe their positions to the promptness and fidelity with which they discharge their duties and report the daily transactions of their offices to the proper headquarters. A writ served in the same way would have been promptly reported, and so, undoubtedly, was the copy of the account served on the agent in this case. The object of the notice is to enable the owner to keep back enough from the contractor to indemnify himself. *De Witt v. Smith*, 63 Mo. 263. The requirement of notice within twenty days is no part of the lien act, and was never intended to secure a lien, but to fix a personal liability. *Groves v. R. R. Co.*, 57 Mo. 304.

RAY, J.—This was a proceeding to enforce the lien of a sub-contractor against a railroad company, under the act of March 21st, 1873, for work and labor performed in the construction of the road-bed mentioned in the petition. Laws 1873, p. 58. The suit was brought in the Howard circuit court in March, 1879. A demurrer was filed to the petition, which the court overruled, and the defendant declining to plead further, a personal judgment was rendered against the defendant for the amount of the lien claimed, as well as a judgment enforcing the statutory lien against the property of the railroad, in the hands of the defendant. The petition, demurrer and judgment thereon constitute the record in the cause. Of these it is sufficient to state such parts thereof as are material and necessary to present the points raised by the demurrer and the judgment, as urged and discussed in the briefs and arguments of counsel.

The petition charges that the defendant is a corporation, created under the laws of the state of Illinois, and is

the owner and operating the Kansas City, St. Louis & Chicago Railroad, within the State of Missouri; that defendant, through its agents, employes and contractors, built and constructed the said Kansas City, St. Louis & Chicago Railroad through parts of Howard and Saline counties in this State; that plaintiff has a lien on said Kansas City, St. Louis & Chicago Railroad for work and labor performed, in the construction of its road-bed, by one J. Shanklin, under and in pursuance of a contract with said contractor of the defendant, for the construction of said road-bed aforesaid; that there was due and unpaid to said Shanklin on said work and labor, after deducting all just credits and payments, the sum of $213.97, and that said Shanklin, for value, sold and transferred to plaintiff said account for said work and labor, whereby plaintiff became sole owner of said demand; that within ninety days after the completion of said work and labor, plaintiff filed in the office of the circuit clerk of the county of Howard aforesaid, (a county through which said Kansas City, St. Louis & Chicago Railroad is located,) a just and true account of said claim and lien after allowing all just credits, etc.; and that within the said ninety days, plaintiff also served a copy of said account on the defendant, (the company owning, having charge of, and operating said Kansas City, St. Louis & Chicago Railroad,) by delivering a copy of said account to Charles Rector, depot agent and in charge of the depot of the Chicago & Alton Railroad Company, at Glasgow station in said county of Howard, the president or other chief officer of said corporation not being found in said county at the time; that by virtue of the statute, in such case made and provided, he has a lien for the amount claimed upon the road-bed, etc., of said Kansas City, St. Louis & Chicago Railroad. Plaintiff therefore asks judgment for said sum of $213.97, with interest and costs, and that a special execution issue therefor, to be levied out of the road-bed, etc., of said Kansas City, St. Louis & Chicago Railroad.

The grounds of the demurrer in substance were as follows: 1st, That the petition did not state facts sufficient to constitute a cause of action; 2nd, Because there was a defect of parties defendant, the Kansas City, St. Louis & Chicago Railroad being a necessary party to a final determination of the matters in controversy; 3rd, Because a copy of the account filed with the circuit clerk was not served on the defendant within ninety days after the performance of said work and labor; 4th, Because notice of said indebtedness of said contractor to said laborer was not given to defendant within twenty days after the performance of said work and labor.

The objection to the judgment rendered is, that it contained a personal judgment against the defendant, for the amount of indebtedness claimed against the contractor, in addition to the judgment enforcing the statutory lien of the laborer against the road-bed, etc., of said railroad, in the hands of the defendant.

The provisions of the act of March 21st, 1873, above mentioned, are incorporated into the Revision of 1879, beginning with section 3200 and ending with section 3216.

Section 3200 of the Revision provides that: "All persons who shall do any work or labor in constructing or improving the road-bed, rolling stock, station houses, depots, bridges or culverts of any railroad company, incorporated under the laws of this State, or owning or operating a railroad within this State, and all persons who shall furnish ties, fuel, bridges, or materials to such railroad company, shall have, for the work and labor performed, and for the materials furnished a lien upon the road-bed, station houses, depots, bridges, rolling stock, real estate and improvements of such railroad, upon complying with the provisions hereinafter mentioned; provided such work and labor is performed, and such materials are furnished under and in pursuance of a contract with such railroad company, its agents, contractors, sub-contractors, lessees, trustees or construction company organized for the uses

and purposes of such railroad company, or having in charge the building, construction or improvement of such railroad or any part thereof."

Section 3202 enacts, among other things, that: "It shall be the duty of all persons claiming the benefit of such lien, within ninety days next after the completion of the work or after the materials were furnished, to file, in the office of the circuit clerk of any county through which said railroad is located, a just and true account of the amount due, after all just credits have been given, which account shall state the amount claimed as due, the general nature, etc., * * and it shall be the duty of all persons claiming said lien, within said ninety days, to serve a copy of the above account on the person or corporation owning or operating or having charge of said road or of the property to which said lien attaches."

Section 3206 requires that: "Any person or corporation owning or operating the railroad to which said lien may apply shall, in each instance, be made a party defendant in all suits for enforcing said liens; but it shall not be necessary to make the party with whom the contract was made for doing the work and labor, or for furnishing the materials, a party defendant in such suit; but such party or parties may, at the option of the plaintiff, be made parties defendant, in which case process may be awarded and served, as other writs of summons, in any county in this State."

The demurrer raises the construction of these sections of the statutes, being sections 1, 2 and 7 of the act of March 21st, 1873, and the sufficiency of the petition thereunder. Besides that, as will be seen in the progress of this opinion, the construction of section 2 of the act of March 24th, 1870, being section 790 of the Revision of 1879, is also involved by this demurrer. Laws 1870, p. 90. The construction of sections 3208 and 3211 of the Revision, as will be seen hereafter, is involved in the nature of the judgment rendered after overruling the demurrer.

In the first place, let us consider the leading objection to the petition which has been pressed upon our attention, 1. LIENS AGAINST and which may be regarded as the control-
RAILROADS: serv-
ice of notice: for- ling question in the case—that is, the suffi-
eign company:
station agents. ciency of the service of the copy of the account provided for in section 3202, upon the defendant in this cause.

It is contended, for the defendant, that the requirement of this service is not only a matter of substance, but that it must be strictly complied with to impart efficacy to the plaintiff's lien; that when, as in this case, the manner of the service is not prescribed by the statute requiring the notice and conferring the lien, the rule is that the service must be actual and personal; that, when the defendant, as in this case, is a corporation, the service can only be given through its president or board of directors, or upon one of its agents having in charge the construction of the railroad in question and whose business it is to look after matters of this sort, and that, as this corporation is a foreign corporation, with its president and board of directors nonresident, the service upon it, "by delivering a copy of said account to Charles Rector, depot agent in charge of the depot of the Chicago & Alton Railroad Company, at Glasgow station in Howard county, Missouri," etc., as set out in the petition, is not sufficient to fix and attach the lien to the road-bed, etc., of the railroad in question, since said Rector was at most, a mere agent of said company whose business and duties had no connection with the construction of said railroad and appertained to matters altogether foreign thereto.

The question is not without difficulty. The mode and the manner of the service of such a notice, as well as the party upon whom it may be made, have been the frequent subject of much and varied discussion in the books and authorities treating upon this and kindred questions.

Wade on the Law of Notice, in section 1293, uses this language: "No step taken in any proceeding, which has

for its object the giving of notice of any thing done, or to be done in the past, the present or the future, in the course of practice in the courts, is of greater, or perhaps equal importance to that of serving notice upon the party to be affected by the proceeding." In section 1301, he remarks that: "In determining upon whom service should be made, the courts have had to meet questions somewhat difficult of solution.     *     *     And even a summons, citation or original notice may be, under some circumstances, served upon an agent, with a stronger probability of conveying information to the principal than would arise from constructive service upon the principal himself, by means of publication in a newspaper, or posting written or printed notices upon court-house doors, at school-houses and road-crossings." In section 1302 the same author states the matter thus: "Original process may, under certain circumstances, be legally served upon the agent of the party to be affected by the proceeding ; as when such party is a corporation, foreign to the jurisdiction of the court from which the summons issues, but doing business and having its interests represented by an agent or manager within such jurisdiction. However, the power of obtaining jurisdiction by this kind of service arises from the non-residence of the corporation notified, rather than from its corporate character ; for service upon the official representative of a domestic corporation, though equally valid, is not regarded as a service upon an agent but upon the corporation itself. It is a resident of the state or territory where it is incorporated, in the sense that it has all the local habitation it can have, there and nowhere else. It can only be reached personally by serving those who exercise its powers and perform its functions, and when its officers and directors act beyond the limits of the state by whose authority they were created a body corporate, they become merely agents of the corporation. When they are exercising their authority in the state where they were incorporated, they are for the purpose of service of process,

the corporation itself; therefore, service upon them is personal service." In section 1309, this author uses this further language: "Upon what particular officer of a corporation, or upon what class of officers, process or other form of notice may be served in proceedings against the corporation, is generally regulated by statute in the different states, and by act of congress in such cases as arise in the federal courts. They include directors, presidents, secretaries, treasurers, managing agents, and a multiplicity of other official representatives, too numerous and too diverse to admit of enumeration. The managing agent is recognized by the courts, both federal and state, as a proper person to serve in such cases."

The same author, in section 672, remarks that: "The rule of law that charges the principal with notice of every fact coming to the knowledge of his agent, which is connected with the business in which the agent is employed, may be tersely expressed thus: 'Notice to an agent is notice to the principal.'" In section 673 the author remarks that: "It is true, that, for all the purposes of the business to which the agency applies, the agent stands in the place and stead of the principal, and the knowledge which he acquires in connection with the particular business of the principal, in which such agent is engaged at the time, will be attributed to the principal, whether in fact communicated or not." In section 674, he adds that: "As we have seen in the next preceding title that whether the principal is bound by contracts entered into by the agent, depends upon the nature and extent of the agency, so does the effect upon the principal, of notice to the agent depend upon the same conditions."

With this exposition and these citations of the general law applicable to questions of this sort, let us see how they affect the case at bar; and to what extent if at all, they are modified by the act in question authorizing the lien, or by the special provisions of our statutes, conferring jurisdiction upon foreign corporations owning, leasing,

building or operating railroads within the State, and regulating the manner of service of both legal process and notice, necessary and proper alike to fix the lien itself and to enforce the same, by due course of law, as attempted by this proceeding.

The manifest object of the legislature in the enactment of the law of March 21st, 1873, was to protect contractors, sub-contractors and laborers in their claims against railroad companies, contractors and sub-contractors for work and labor performed, and material furnished, in the construction of railroads; and at the same time enable said railroad companies to protect themselves against such liens, by withholding from the defaulting contractors or sub-contractors the pay due them, until they had settled up and paid such sub-contractors or laborers the amount so claimed and due and so secured by said lien.  This being the purpose of the enactment, it should be so construed as to effect and not defeat these just and beneficent objects, if it is possible so to do, according to the accepted rule of construing statutes.

In the case of De Witt v. Smith, 63 Mo. 263, this court, in construing the mechanics' lien law, after which, to a great extent, the act in question was modeled, used this language:  "The courts, at one time, were inclined to hold that the enactments for mechanics' liens were in derogation of the common law, and their provisions should, therefore, be construed strictly against those who sought to avail themselves of their benefits.  But the better doctrine now is, that these statutes are highly remedial in their nature and should receive a liberal construction to advance the just and beneficent objects had in view in their passage.  Their great aim and purpose is to do substantial justice between the parties, and this should never be lost sight of in giving them a practical construction."

The 8th section of the act, being section 3207 or the Revision, provides that:  "The pleadings, practice, process and other proceedings in cases arising under this article

shall be the same as in ordinary civil actions and civil proceedings in circuit courts, except as herein otherwise provided; the petition, among other things, shall allege the facts necessary for securing a lien under this article, and a description of the property charged therewith." The service of the copy of the account, provided for by the 3rd section of that act, being section 3202 of the Revision, is at least, a proceeding arising under this act; and under the liberal rule of construction approved in the case of *De Witt v. Smith,* 63 Mo. 263, above cited, may well be embraced by the terms, "ordinary civil actions and civil proceedings" contained in said section 8 above quoted. To limit said phrase in said section to proceedings arising in circuit courts during the progress of a suit, and to exclude a "proceeding" in cases arising under that act and before the institution of the suit, to say the least of it, is to adopt a strict and rather technical rule of construction, at variance with the doctrine laid down in 63 Mo. 263, *supra,* and calculated to defeat the manifest object of the act in question. If this is a "proceeding" within the purview of section 8 of the act in question, its service should be that of any ordinary notice arising in the progress of a cause, in other civil cases, and that mode of service is upon the party or his attorney, by delivering to such party or attorney a copy of such notice. R. S., § 3505.

The act in question, it is apparent, embraces foreign as well as domestic corporations, and recognizes their right to be here and to own, lease, build and operate railroads within this State, and subjects them to the like liens, notices and process, with the like mode of fixing and enforcing said liens, and serving and executing said notices and process, as pertain to domestic corporations.

The question arises just here: How came this foreign corporation in this State? By what authority does it claim, own, lease, build or operate a railroad within this State? The answer to this question is found in the act of March 24th, 1870. Laws 1870, p. 89. The 2nd section of that

act, being section 790 of the Revision of 1879, provides and authorizes such a foreign corporation to own, lease, construct and operate such a railroad within the State, as is charged in this petition. And that act also, in the latter clause of said section (790) makes said foreign corporation subject to all regulations and provisions of law governing domestic corporations and liable for all violations of any of the laws of the State, with capacity and liability to sue and be sued in all cases and for the same causes and in the same manner as corporations chartered by the laws of this State; and the last clause of said section expressly requires such corporations to "establish and maintain an office or offices at some point or points on the line of its road so leased or constructed or operated, at which legal process and notice may be served, as upon railroad corporations of this State." The office or offices thus established and maintained by such foreign corporations, and the person or persons in charge thereof, whatever other duties they may perform, or may be assigned to them by their principal, become, by express statute, the official representatives of such corporations for the purpose of being served with all legal process and notice, necessary and proper either to confer jurisdiction upon our courts or to found a right or to fix a lien, to the same extent and in the same manner as far as practicable, as domestic corporations are made liable by statute for similar purposes.

Wade on the Law of Notice, in section 1305, treating of a kindred subject, uses this language: "There can be no doubt of the justice of the very temperate provisions interposed by the legislative bodies of the states for the protection of their own citizens. To require a non-resident corporation to submit to the local jurisdiction of the court, where it undertakes to transact business, is simply to place it, as near as may be, on an equal footing with domestic corporations and resident individuals who may be its rivals for public patronage. It would be eminently unjust to compel the states to grant to non-residents the

same privileges, immunities and rights as are enjoyed by their own citizens, and then deprive the latter of the same power of enforcing contracts against the foreigners, as they might exercise against resident persons and corporate bodies."

This language is eminently applicable to the statutory provisions contained in the acts of 21st of March, 1873, and 24th of March, 1870, now under consideration, when applied to the case above. By operation of said statutes, such corporations, in some sense, become domesticated, and they are no longer treated as wholly foreign, and their officers and agents, having in charge such offices so established and maintained in this State, are no longer treated and held as mere agents of such corporation, but for the purpose of service of process or notice, they are the corporation itself, in the same sense and to the same extent as corporations chartered by the laws of this State. *Farnsworth v. The Alton & St. Louis R. R. Co*, 29 Mo. 78; *St. Louis v. Wiggins Ferry Co.*, 40 Mo. 580.

A corporation can only be reached personally by serving those who exercise its powers and perform its functions, and when, as in the case at bar, the corporation is a foreign one, (with its president, chief officers and board of directors confessedly non-resident,) but owning, leasing, building or operating a railroad within the State, the persons in charge of said offices are the persons exercising its powers and performing its functions within this State, so far at least as to render them amenable to the jurisdiction of our courts for all the purposes of these two statutes. These acts are *in pari materia*, and are to be read and construed together, as if they formed parts of the same statute. Potter's Dwarris on Statutes and Constitutions, p. 145.

We think, therefore, that the term " notice " mentioned in the last clause of section 2 of the act of March 24th, 1870, being section 790 of the Revision, may very well be held to include all notices of whatever kind, whether

original or mesne, that may become necessary or proper to be served upon such a corporation, whether its object be to found a right, confer a lien, or simply to notify the corporation of some ordinary step occurring in the progress of a cause in court.　Any other construction would fail to accomplish the manifest and declared object of the act in question.　Its purpose is to render such corporations in all particulars amenable to our jurisdiction and laws, the same as domestic corporations, including the law of notice, wherever and for whatever object the same might become necessary or proper.　The service of the copy of the account, mentioned in section 3 of the act of March 21st, 1873, being section 3202 of the Revision of 1879, is a "proceeding" arising in a case under that act, and its object being to notify the party in question, we see no reason why the manner of its service should not be governed by the same rule of construction.　In such cases as the one at bar, such persons in charge of said offices, under the statute in question, become the official representatives of such corporations for the purpose of serving process or notice; and service upon them is service upon the corporation itself, and, of course, both actual and personal.

In such cases also, the statute makes them the proper party to be served, irrespective of the nature of the business and character of the duties otherwise assigned to them by their employer, the foreign corporation in question.

The substance of this provision of the act of March 24th, 1870, was afterward, in part, incorporated into the Revision of 1879, as the 4th subdivision of section 3489 of the practice act.

The objection that there is a defect of parties defendant, is not well taken.　Under section 7 of the original act, being section 3206 of the Revision, whatever interest the person or corporation owning or operating the railroad in question to which the lien applies, had, will certainly be affected and bound by this

2. ——: enforcement in case of several owners.

proceeding, judgment or sale thereunder. If the railroad company, whose road is thus owned, leased or operated, has any interest or ownership therein, that interest or ownership whatever it may be, will not be affected or bound thereby, unless it is made a party. That is all.

The objection, that notice of said indebtedness of said contractor to said laborer, was not given to defendant within twenty days after the performance of said work and labor, has no application to the cause of action presented by the petition.

3. RAILROADS: personal liability in favor of sub-contractors, laborers, etc.

This is a proceeding to subject the road-bed in the hands of the defendant to sale, to satisfy the amount of plaintiff's lien, and not to render the defendant personally liable therefor, as is contemplated and may be done under section 787 of the Revision of 1879. The petition, in some particulars, is not as explicit as it might be, but substantially states a cause of action under the act in question, and we, therefore, find no error in the action of the circuit court in overruling said demurrer.

But, as before remarked, the record shows that a personal judgment was thereupon rendered against the defendant for the amount of plaintiff's said lien. This part of the judgment is objected to and is manifestly erroneous. Section 9 of the original act, being section 3208 of the Revision, expressly declares that no personal judgment shall be rendered in a proceeding like this, except as against such defendants as might be sued thereon in ordinary actions at law. This defendant, not being a party to the contract between the laborer and the contractor in question, was not personally liable and could not be sued thereon in an ordinary action at law, unless he was notified within twenty days and made so, as provided by section 787 aforesaid, and this was not pretended in this case. Section 3211 is limited to cases where for some reason, the defendant is personally liable, such as where he is a party to the contract, or made liable thereon under section 787 aforesaid, and has no application to a case like

4. —— : ——.

12—76

the one at bar, where a judgment enforcing the statutory lien is alone authorized. For this reason, that part of the judgment making the defendant personally liable for the amount of plaintiff's lien is erroneous, and to that extent the judgment of the circuit court is reversed, and the judgment thus modified will be entered here, such as the law requires, and the plaintiff will pay the costs of the appeal. *Philips v. Stewart*, 69 Mo. 149; *Kritzer v. Smith*, 21 Mo. 302. All the judges concur.

SHERWOOD, C. J.—I concur in the result, and base my concurrence on the state of the pleadings. HOUGH and HENRY, JJ., concur in this.

In the case of Devereux against the same defendant, decided at the same time as the foregoing case, the judgment was subjected to the same modification, RAY, J., delivering the opinion.